**Jerry C. SPELLMAN, Appellant,**

v.

**AMERICAN SECURITY BANK, N.A., Appellee.**

**Nos. 84–1297, 85–57 and 85–186.**

District of Columbia Court of Appeals.

Argued April 16, 1985.

Decided Jan. 31, 1986.

---

Susan A. Grüsser, with whom David F. Albright, Baltimore, Md., was on the brief, for appellant.

Douglas B. Mishkin, Washington, D.C., for appellee.

Before PRYOR, Chief Judge, and FERREN and TERRY,* Associate Judges.

PER CURIAM:

These consolidated appeals challenge the grant of summary judgment awarding American Security Bank money allegedly due on two promissory notes which Jerry C. Spellman executed and a third note which he guaranteed, on the ground that genuine issues of material fact exist regarding whether the bank's claims were barred by the statute of limitations. The bank contends that summary judgment was proper and that Spellman cannot raise the defense of the statute of limitations to the guaranty for the first time on appeal. We reverse.

I

The bank sued Spellman on August 4, 1981, for breach of contract to recover money due on three promissory notes and a Covenant Not to Sue. Two notes, dated May 8 and 20, 1969, were for $200,000 each plus eight percent interest. After Spellman experienced difficulty in paying these notes, the bank sold the pledged collateral and notified him that the principal balances on the notes had been satisfied, but unpaid interest remained due. A third note for $270,000 was executed on March 6, 1970, by Action Enterprise Corporation (Action) and guaranteed by its owner and Spellman. Pursuant to a Memorandum of Understanding, dated March 5, 1970, the bank could demand payment of $200,000 immediately upon the availability of funds or ninety days from the date of the note, whichever was earlier; the remaining $70,000 in principal was also subject to demand immediately upon the availability of funds or eight months from the date of the note, whichever was earlier. Nine months later,

in December 1970, Spellman and the bank signed under seal a Covenant Not to Sue. In March 1973, pursuant to a second Memorandum of Understanding, the bank waived its claim against Action, and a month later Spellman signed a Consent and Authorization whereby the bank agreed to dismiss a lawsuit against Action's owner on the condition that it preserved its rights against Spellman as guarantor.

Spellman asserted eleven defenses in his answer to the complaint, including the statute of limitations, fraud, failure to prosecute, and laches. Following discovery, the bank filed a motion for summary judgment. The bank's Memorandum of Points and Authorities recited its efforts to collect the notes, including a 1977 lawsuit in Virginia against Spellman and his wife, and Spellman's alleged avoidance of service until December 1983. It attached a statement of material facts as to which there is no genuine issue, as required by Super.Ct.Civ.R. 12–I(k), as well as bank documents and correspondence, and affidavits of two vice presidents of the bank.

Spellman opposed the motion for summary judgment and also filed a cross-motion for dismissal under Super.Ct.Civ.R. 41(b) for failure to prosecute. He argued that the notes and the Covenant Not to Sue were unenforceable because he had established a prima facie defense of fraud. He relied on his deposition testimony with respect to the circumstances under which he was allegedly induced to sign the guaranty, and his Rule 12–I(k) statement in which he set forth facts to show why the bank's claims were time-barred and barred as a result of its failure to prosecute. He also claimed, relying on his deposition, that the guaranty was without consideration. His Rule 41(b) motion was based on the bank's alleged lack of due diligence in instituting the instant action, which was filed five years after his last payment on the notes, and in which he had not been served with

* After recusal by Associate Judge Rogers, who was a member of the division, Associate Judge Terry was chosen by lot to replace her.

process until twenty-eight months after the complaint was filed. The Rule 41(b) pleadings were incorporated by reference in his summary judgment papers.

The bank filed a response contending, first, that Spellman's failure to refer to the Covenant Not to Sue in his opposition to summary judgment constituted a concession of liability; second, that there was adequate consideration for the guaranty;[1] and third, that the statute of limitations on the 1969 notes did not begin to run until July 31, 1975, at the earliest and was tolled because Spellman had "assiduously avoided service" from 1978 until he was served on December 27, 1983. The bank attached a second affidavit from one of its vice-presidents (Lewis) and accompanying documents in support of the latter contention.

The trial court granted the motion for summary judgment, without reaching the issues of the tolling of the statute of limitations and the enforceability of the Covenant Not to Sue. The court also denied Spellman's cross-motion to dismiss for lack of prosecution.

## II

■ "Summary judgment is an extreme remedy which is appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law." *Willis v. Cheek,* 387 A.2d 716, 719 (D.C. 1978). It should be granted sparingly in cases involving motive or intent. *Wyman v. Roesner,* 439 A.2d 516, 519 (D.C.1981). A movant has the burden of proving an absence of material facts in dispute. *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C. 1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); *Wyman v. Roesner, supra,* 439 A.2d at 519; *Willis v. Cheek, supra,* 387 A.2d at 719. When reviewing a trial court's order granting summary judgment, this court must conduct an independent review of the record. *Burt v.*

*First American Bank,* 490 A.2d 182, 184 (D.C.1985); *Phenix-Georgetown, Inc. v. Chas. H. Tompkins Co.,* 477 A.2d 215, 221 (D.C.1984); *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983). Our standard of review is the same as the trial court's. *Burt v. First American Bank, supra,* 490 A.2d at 184; *Holland v. Hannan, supra,* 456 A.2d at 814; *Wyman v. Roesner, supra,* 439 A.2d at 519.

■ If a movant has made a prima facie showing that there is no genuine issue of fact in dispute and it is clearly entitled to judgment as a matter of law, the opposing party may prevail only if he rebuts the showing with specific evidence. *Wyman v. Roesner, supra,* 439 A.2d at 516. "[T]he evidence—consisting of the pleadings and other material in the record—must be construed in the light most favorable to the party opposing the motion." *Burt v. First American Bank, supra,* 490 A.2d at 185; *accord, Holland v. Hannan, supra,* 456 A.2d at 815; *Nader v. de Toledano, supra,* 408 A.2d at 42; *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). Although material factual disputes must be pleaded in accordance with Super.Ct.Civ.R. 12–I(k) and 56(e), *Bennett v. Kiggins, supra,* 377 A.2d at 59, the court must still review all other material of record in determining whether there are disputed facts. *Holland v. Hannan, supra,* 456 A.2d at 815; *District of Columbia v. Gray,* 452 A.2d 962, 964 (D.C.1982); *Wyman v. Roesner, supra,* 439 A.2d at 519. All inferences which may be drawn from subsidiary facts are to be resolved against the moving party. *Willis v. Cheek, supra,* 387 A.2d at 719, citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), and *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

---

**1.** The bank also referred to three documents in which Spellman had acknowledged the guaranty: Memoranda of Understanding of August 7,

1972 and March 19, 1973, and a Consent and Authorization of April 17, 1973.

## III

Expiration of the statute of limitations is a question of law, but certain facts must be determined before the question of law can be reached. *See Calvin v. Calvin,* 94 U.S. App.D.C. 42, 45, 214 F.2d 226, 229 (1954); *United States v. Pall Corp.,* 367 F.Supp. 976, 981 (E.D.N.Y.1973); *Chartener v. Kice,* 270 F.Supp. 432, 439 (E.D.N.Y.1967). In this jurisdiction the time within which a party may commence an action to recover on a promissory note is three years. D.C. Code § 12–301(8) (1981); *see Toomey v. Cammack,* 345 A.2d 453, 454 (D.C.1975). A cause of action against a maker or acceptor of a demand instrument accrues "upon its date, or if no date is stated, on the date of issue." D.C.Code § 28:3–122(b) (1981). Accepting for purposes of argument the bank's assertion that the statute of limitations began to run on the 1969 demand notes at the earliest in July 1975, the statute had run by the time the complaint was filed in 1981 unless there were intervening circumstances which tolled the statute. Herein lies the dispute.

In contending that Spellman intentionally and continuously avoided service of process so that the statute of limitations was tolled until he was served on December 27, 1983,[2] the bank relies on Spellman's deposition testimony that he traveled a lot, and on the affidavits of its vice-president (Lewis affidavits) which recited the bank's efforts to serve Spellman. It also contends that Spellman is estopped to raise the statute of limitations as a defense because the bank was lulled into inaction when he agreed to enter into settlement negotiations in the Virginia litigation. In response Spellman relies on his statement of material facts in which he denied evading service, and attacks the Lewis affidavits as hearsay and thus not in compliance with Super.Ct.Civ.R. 56(e). He also claims that he did not imply a promise to pay by entering into settlement negotiations in the Virginia litigation

and therefore is not estopped to raise the statute of limitations as a defense. We hold that the bank has failed to demonstrate as a matter of law either that Spellman evaded service of process or that its claims on the 1969 notes are not barred by the three-year statute of limitations.

■ Super.Ct.Civ.R. 56(a) requires that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated therein." The first Lewis affidavit contains conclusory assertions about the bank's efforts to locate and serve Spellman and fails to recite specific facts or refer to documentary evidence. The second Lewis affidavit refers to the bank's interoffice memoranda about its efforts to serve Spellman and to a letter and report from the special process server about his efforts to locate and serve Spellman. The affidavits do not set forth facts which would be admissible in evidence since some of the assertions are hearsay. Although the bank's memoranda may be admissible under the business records exception to the hearsay rule, *see Gabrielian v. Gabrielian,* 473 A.2d 847, 852 n. 12 (D.C.1984); *Christensen v. Gammons,* 197 A.2d 450, 453 (D.C. 1964); Super.Ct.Civ.R. 43–I, the letter and report from the special process server would be inadmissible for the truth of the matter asserted. *See Capitol Car Sales, Ltd. v. Nellessen,* 217 A.2d 115, 117 (D.C. 1966); *Emerson v. American Express Co.,* 78 A.2d 862, 863–64 (D.C.1951); *Schwartz v. Sandidge,* 63 A.2d 869, 871 (D.C.1949). *See also Washington Post Co. v. Keogh,* 125 U.S.App.D.C. 32, 38, 365 F.2d 965, 971 (1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967); *Jameson v. Jameson,* 85 U.S.App.D.C. 176, 178, 176 F.2d 58, 60 (1949). Accordingly, the affidavits and the documents attached to the

---

2. D.C.Code § 12–303(b) provides:
 When [a resident of the District of Columbia] absconds or conceals himself after the cause of action accrues, the time of his absence or concealment may not be computed as part of the period within which the action must be brought.

second Lewis affidavit were insufficient to meet the bank's burden to show there was no genuine factual dispute and that the three-year statute of limitations was tolled for a sufficient time to protect the bank's claims.

■ Although Spellman would be estopped from asserting the statute of limitations as a bar if he had "done anything that would have tended to lull [the bank] into inaction and thereby permit the statutory limitation to run against [it]," no estoppel arose if there was sufficient time for the bank to act once the circumstances inducing delay ceased. *Property 10–F, Inc. v. Pack & Process, Inc.,* 265 A.2d 290, 291 (D.C.1970); *see Emersons, Ltd. v. Max Wolman Co.,* 388 F.Supp. 729, 731–732 (D.D.C.1975), *aff'd,* 174 U.S.App.D.C. 241, 530 F.2d 1093 (1976). There were significant periods of time when the bank made no effort to serve Spellman despite the fact that it was repeatedly advised that he lived at the Watergate apartments. For example, in February 1979 the bank stopped all efforts to serve Spellman when it decided to pursue a lawsuit in Virginia against Mr. and Mrs. Spellman in an effort "to squeeze the husband out of the woodwork." The strategy initially worked: negotiations to settle the Virginia litigation began in late 1979 with Spellman and his attorney. During that time the bank agreed to suspend its efforts to serve him. Then, when the bank settled its lawsuit against Mrs. Spellman in early 1980, it changed its strategy; there were no other assets in Virginia, and the Virginia litigation had failed to produce payment by Spellman. Even assuming the statute was tolled during the 1979 settlement negotiations in the Virginia litigation, the bank ceased to be lulled when the parties reached a stalemate.

The record does not resolve whether Spellman otherwise lulled the bank into inaction by concealing himself for a sufficient period of time to protect the bank's claims on the 1969 notes. Until the bank filed the instant lawsuit against Spellman in August 1981, it made no attempt to serve him. Further, in connection with this case, two attempts were made to serve Spellman in August and September 1981 (the process server noted on an alias summons that it was difficult to gain access to Spellman's apartment building), but no other attempt was made until late September 1983, when the bank notified the process server that it wished to resume attempts at service. The process server's first two efforts failed. On one occasion he could not gain entry to Spellman's apartment building, and on a second try he gained entry but received no answer when he knocked on Spellman's apartment door. The bank then instructed the process server to suspend efforts for one month. Spellman was eventually served at his apartment on December 27, 1983. Thus, while pursuing its Virginia strategy, the bank suspended attempts to serve Spellman for more than a year, thereafter made no attempt to serve him for a second year, and suspended its efforts to serve him for more than two years after filing the instant lawsuit.

■ Because there remained questions about whether Spellman evaded process by absenting himself from the District of Columbia, summary judgment on the 1969 notes was improper. *International Underwriters, Inc. v. Boyle,* 365 A.2d 779, 782 (D.C.1976) ("Summary judgment is appropriate only where 'it is quite clear what the truth is …'" (citation omitted)). Spellman's assertions, supported by appropriate record references, that he lived "primarily" at the Watergate where he ultimately was served, that he had no other residence, and that he received messages at the Watergate, were sufficient to raise a material issue of fact.

■ The bank's contention, relying on *Kron v. Young & Simon, Inc.,* 265 A.2d 293 (D.C.1970), that it was entitled to summary judgment because Spellman failed to comply with the requirements of Rule 12–I(k) and Rule 56(e) is without merit. That his response to summary judgment was not lengthy, referred only to his deposition, Rule 12–I(k) and Rule 41(b) pleadings, and did not include affidavits, neither violated the rules nor relieved the bank of its bur-

den to show that there was no genuine factual dispute or that it was entitled to judgment as a matter of law. *Burt v. First American Bank, supra,* 490 A.2d at 185; *Stevens v. Airline Pilots Ass'n Int'l,* 413 A.2d 1305, 1309 (D.C.1980), *cert. denied,* 449 U.S. 1111, 101 S.Ct. 919, 66 L.Ed.2d 839 (1981).[3] By providing that summary judgment shall be entered "if appropriate" in the absence of a response by the opposing party, Rule 56(e) "implicitly recognizes that there are situations in which no defense will be required by a party opposing a summary judgment motion." *Id.* at 1309; *see Nader v. de Toledano, supra,* 408 A.2d at 48; *International Underwriters, Inc. v. Boyle, supra,* 365 A.2d at 782. Since there was at least doubt as to whether an issue of fact had been raised, summary judgment was inappropriate.

## IV

With respect to the guaranty of the 1970 note, Spellman argues, contrary to the bank's assertion, that he claimed in the trial court that the guaranty was barred by the statute of limitations. He relies on his Rule 12–I(k) statement of material facts in dispute (paragraphs 7, 8 and 9),[4] his memorandum in support of his motion to dismiss for lack of prosecution, and his answer to the complaint. Spellman's memorandum in opposition to summary judgment asserted, in conclusory fashion, that the bank's memorandum in support of summary judgment misstated the facts and avoided the real legal issues. It focused primarily on the bank's failure to meet its burden to establish the validity of the guaranty. However, his attached Rule 12–I(k) statement asserted that "all causes of action are time barred," and also referred to additional grounds on which the bank's various claims failed. Although the assertion in paragraph 8 refers directly to the 1969 notes, Spellman cited in support of it his Rule 41(b) pleadings, which applied to all of the bank's claims, as he noted in paragraph 7.

---

**3.** In *Stevens, supra,* we referred specifically to the last sentence of Rule 56(e) and the Advisory Committee Note to the corresponding federal rule, pointing out that "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." 413 A.2d at 1309.

Although the court may accept as true the movant's Rule 12–I(k) statement of facts or other verified facts if they are not countered with specificity in a timely fashion, *Milton Properties, Inc. v. Newby,* 456 A.2d 349, 354 (D.C.1983), Spellman is entitled on summary judgment to have factual inferences viewed favorably to him. *Cf. Adickes v. S.H. Kress & Co., supra,* 398 U.S. at 159–160, 90 S.Ct. at 1609; *Willis v. Cheek, supra,* 387 A.2d at 719 (all inferences which may be drawn from subsidiary facts are to be resolved against movant). Under this standard, the bank's reliance on *Dillard v. Travelers Ins. Co.,* 298 A.2d 222, 223 (D.C.1972) (no genuine issue of material fact established where appellant asserted legal conclusions without supporting factual assertions and raised issues which merely went to merits of claim rather than to defenses under statute of limitations), is misplaced. Spellman's summary judgment pleadings alleged facts, with record references, which, if proved, would establish a valid defense to the bank's claims on the 1969 notes. For similar reasons, *Reynolds v. Needle,* 77 U.S. App.D.C. 53, 54, 132 F.2d 161, 162 (1st Cir.1942) (summary judgment appropriate where appellant contended there might be facts to toll statute, but alleged no such facts), is not on point.

**4.** Paragraphs 7, 8, and 9 of Spellman's Rule 12–I(k) statement of material facts as to which there is a genuine issue read:

7. Defendant's Cross-Motion for Dismissal challenges the enforceability of the Guaranty on the grounds that Mr. Spellman was improperly induced to sign the Guaranty and that all plaintiff's claims against him are barred by the plaintiff's failure to prosecute. Memorandum of Points and Authority in Support of Defendant's Cross-Motion for Dismissal for Failure to Prosecute.

8. The plaintiff has no cause of action for the interest on the Notes of May 8, 1969 and May 20, 1969 as all causes of action are time barred. Memorandum in Support of Cross-Motion. Plaintiff has no cause of action on the Guaranty because Mr. Spellman was improperly induced into signing the Guaranty and Plaintiff has waived its rights by failing to prosecute.

9. The plaintiff made no effort to prosecute this action between 1971 and 1981. The complaint in this case was filed August 4, 1981.

In paragraph 9 he referred to the bank's delay of more than ten years in filing suit. Further, in paragraph 10,[5] referencing his deposition, he asserted that he did not attempt to evade service of process and, since at least 1974, had resided at the place where he ultimately was served. His memorandum in support of the Rule 41(b) motion argued that the bank "offers no justification for its failure promptly to institute a cause of action," because it was undisputed he had resided in the District of Columbia since 1969, and service could have been made, according to cases he cited, on the resident manager of his apartment complex as well as by mail under Super.Ct.Civ.R. 4(d)(3).

■ A basic rule of appellate procedure is that a party may not raise on appeal issues which he failed to raise below. *Miller v. Avirom*, 127 U.S.App.D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967);[6] *Frog, Inc. v. Dutch Inns of America, Inc.*, 488 A.2d 925, 930 (D.C.1985). We conclude that Spellman sufficiently raised the statute of limitations defense to the guaranty in the trial court. The guaranty on its face raised a timeliness question, and a fair inference in favor of Spellman, as the non-moving party, is that he intended his statute of limitations defense to apply to all of the bank's claims. He pleaded the statute of limitations in his answer and sought dismissal of the complaint because of the bank's delays. In addition, he filed an opposition to the summary judgment which referred to a decade of delay and to specific deposition testimony in support of his denial of avoiding service. Although the alternative arguments in his summary judgment pleadings could have been stated with greater precision, they were sufficient to put the bank on notice of the statute of limitations defense since its summary judgment pleadings responded with specificity to Spellman's contentions about the bank's delays. We are satisfied that the record was sufficient to apprise the trial court that Spellman disputed the bank's assertion that its claims were not time-barred.[7] To interpret the record differently would require acceptance of the unreasonable inference that Spellman, without expressly saying so, intended to assert the statute of limitations defense only with respect to the bank's lesser monetary claims while foregoing that available defense to a claim more than ten times greater; the complaint alleged that approximately $37,500 was due in unpaid interest on the 1969 notes, while more than $475,000 was due in principal and interest on the guaranty.

This case is distinguishable from *Kron v. Young & Simon, Inc., supra,* in which this court, in affirming the grant of summary judgment on statute of limitations grounds, noted that appellant had not filed an opposition to the summary judgment motion. 265 A.2d at 295. *See also Willis v. Cheek, supra,* 387 A.2d at 719 (inferences which

---

5. Paragraph 10 of Spellman's Rule 12–I(k) statement reads:

> 10. Mr. Spellman did not attempt to evade service of process. Mr. Spellman has lived at the Watergate Cooperate [*sic*] Apartments since at least 1974.

6. This rule reflects "considerations of fairness to the court and the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact." *Miller v. Avirom, supra,* 127 U.S.App.D.C. at 370, 384 F.2d at 322. As has been recognized, "'[e]normous confusion and intermediate delay would result if counsel were permitted to appeal upon points not presented to the court below.'" *Id.* at 370 n. 11, 384 F.2d at 322 n. 11, quoting *Johnston v. Reily*, 82 U.S. App.D.C. 6, 7, 160 F.2d 249, 250 (D.C.Cir.1947).

7. The hearing on the motion for summary judgment focused primarily on Spellman's defenses to the guaranty, which the bank characterized as the most important debt. In responding to the judge's questions, Spellman's attorney called the court's attention to his pleadings in opposition to summary judgment, including Spellman's deposition. He also referred to the fact that two of the notes had been executed twelve years ago and the third had been executed eleven years ago, while admitting that Spellman and the bank had been negotiating at points before the instant lawsuit was filed. The judge agreed to review Spellman's pleadings in opposition to summary judgment before ruling.

may be drawn from subsidiary facts should be resolved in favor of nonmoving party). *Compare Calvin v. Calvin, supra,* 94 U.S. App.D.C. at 45, 214 F.2d at 229 (although face of pleading indicated defendants were not residents of District of Columbia at time of trial, allegation that they were residents but absent from District when cause of action accrued raised genuine issue of fact), *with Reynolds v. Needle, supra* note 3, 77 U.S.App.D.C. at 54, 132 F.2d at 162 (issue of tolling of statute of limitations not raised at hearing on motion for summary judgment).[8] But even if we were to hold that Spellman's opposition to summary judgment was insufficient to raise the issue that the claim on the guaranty was time-barred, the bank's summary judgment pleadings failed to sustain its burden of showing that there was no material factual dispute or to demonstrate, as a matter of law, that the statute of limitations was tolled for a sufficient period of time to protect its claim under the three-year statute of limitations. Accordingly, summary judgment on the guaranty claim was inappropriate.

## V

■ The bank contends that it is nevertheless entitled to recover under the Covenant Not to Sue, which is subject to a twelve-year statute of limitations. D.C. Code § 12–301(6) (1981). The construction of a written agreement is a question of law when its provisions are unambiguous. *Rich v. Sills,* 130 A.2d 920, 922 (D.C.1957); *see 1901 Wyoming Avenue Cooperative Ass'n v. Lee,* 345 A.2d 456, 461 & n. 8 (D.C.1975). This court has held that "[a]

distinct and unequivocal acknowledgment of a debt as a still subsisting personal obligation constitutes an implied promise to pay it, and takes the contract out of the statute [of limitations]." *Heffelfinger v. Gibson,* 290 A.2d 390, 394 (D.C.1972); *see* D.C.Code § 28–3504 (1981).[9] *See also Irvine v. Gradoville,* 95 U.S.App.D.C. 263, 264–265, 221 F.2d 544, 546–547 (1955) (letter including promise, express or implied, to pay debt sufficient acknowledgment of the debt to toll the statute of limitations; promise to pay made letter more than a mere acknowledgment of prior debt which alone was insufficient to toll statute); *Noel v. Baskin,* 76 U.S.App.D.C. 332, 333, 131 F.2d 231, 232 (1942) (reservation of right to challenge validity of notes precluded new and independent promise to pay, and without such new promise, sealing of agreement did not change period of statute of limitations of notes).

The Covenant Not to Sue was dated December 21, 1970, and was under seal. It stated that the bank had demanded payment of $200,000 on the guaranty, but that since payment had not been made, the balance of the note had been accelerated. It also recited that Spellman had asserted, and the bank had denied, that he had certain defenses to his liability as guarantor of the note. In consideration of Spellman's "willingness to compromise and adjust the amount of his liability as an endorser and guarantor of the Note . . . and to collateralize his obligation to the bank as compromised and adjusted," the bank agreed to adjust Spellman's obligation under the third note to $220,000 plus interest of nine

---

8. *See also Wittlin v. Giacalone,* 81 U.S.App.D.C. 20, 21–22, 154 F.2d 20, 21 (1946); C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2738, at 848–86 (1983).

9. D.C.Code § 28–3504 (1981) provides in pertinent part:

In an action upon a simple contract, an acknowledgment or promise by words only is not sufficient evidence of a new or continuing contract whereby to take the case out of the operation of the statute of limitations or to deprive a party of the benefit thereof unless

the acknowledgment or promise is in writing, signed by the party chargeable thereby. This section does not alter or take away, or lessen the effect of a payment of principal or interest made by any person. . . . An indorsement or memorandum of a payment written or made upon a promissory note, bill of exchange, or other writing, by or on behalf of the party to whom the payment is to be made, is [not] sufficient proof of the payment so as to take the case out of the operation of the statute of limitations.

percent from March 6, 1970, until the compromised sum was paid in full. Spellman was also to pay all of the outstanding interest on the third note on the date the Covenant was executed and, beginning January 1, 1971, to pay interest monthly and $220,000 by July 1, 1971, or earlier, as sufficient funds became available to him. He made two assignments of additional shares of stock to the bank "to secure the prompt performance of his obligation" under the Covenant. The Covenant also provided that as long as Spellman complied with its terms, the bank would not initiate legal action against him. Finally, the Covenant stated that it was not designed to release or discharge any person under the guaranty, and that the bank could "continue to carry the note in a matured and delinquent position."

 By its terms, the Covenant Not to Sue was more than the acknowledgment of a prior debt. Although Spellman contended in opposition to the motion for summary judgment that the Covenant Not to Sue was not consideration for the guaranty, he admitted that by the Covenant he had received a partial release of his liability under the guaranty and that the bank had obtained a sealed document. Accordingly, we hold that the Covenant Not to Sue is subject to a twelve-year statute of limitations, and that the bank timely filed its claim under it. Upon remand the trial court shall determine whether Spellman has asserted a defense which, if proved, would entitle him to prevail on the bank's claim under the Covenant.[10]

*Reversed and remanded.*

---

**10.** In view of our disposition, we do not address Spellman's other claims, including those with respect to alleged errors in the award of damages.